**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

November 9, 2020

Jay V. Surgent, Esq.
Weiner Law Group LLP
629 Parsippany Road
P.O. Box 438
Parsippany, NJ 07054
*Counsel for Defendant*

Jordan Milowe Anger, Esq.
Jose Almonte, Esq.
Mary Elissa Toscano, Esq.
Barbara Ward, Esq.
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
*Counsel for the United States of America*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

  Re: *United States v. Mata*
     **Criminal Action No. 15-153 (SDW)**

Counsel:

  Before this Court is Defendant Ralph E. Mata's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), and an alternative application for home confinement pursuant to 18 U.S.C. § 3624(c). This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's Motion.

**DISCUSSION**

A.

  Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

1

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).[1]  As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2 (citing 18 U.S.C. § 3582(c)(1)(A)).

B.

On March 31, 2015, Defendant pled guilty to a three count Information, which charged him with aiding and abetting a narcotics conspiracy, narcotics conspiracy, and money laundering in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and § 846, 18 U.S.C. §§ 2 and 1957. (D.E. 24–26.) On December 2, 2015, this Court sentenced Defendant to 120 months of imprisonment and 5 years of supervised release on each of the three counts to run concurrently. (D.E. 29, 32.) Thereafter, the Government moved for a reduction of sentence pursuant to Federal Rule of Criminal Procedure 35 and 18 U.S.C. § 3553(e), and the Court reduced Defendant's sentence from 120 months to 90 months of imprisonment. (D.E. 33, 36, 37.) Defendant is currently serving his sentence at FCI Jesup in Jesup, Georgia, and is scheduled to be released on May 19, 2022. (D.E. 40-3 at 38.)[2] Defendant has served approximately 58 months of his 90-month sentence. (D.E. 41 at 33.)

---

[1] The Sentencing Commission's Policy Statement identifies four categories of "extraordinary and compelling reasons," including: (A) the defendant's medical condition; (B) the defendant's age of at least 65-years combined with "serious deterioration in physical or mental health because of the aging process" when he or she "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;" (C) the defendant's unique family circumstances pertaining to caregivers of the defendant's minor children or spouse; or (D) other extraordinary and compelling reasons "other than, or in combination with, the reasons described" in the prior provisions. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, cmt. n.1 (A)–(D). The Policy Statement further defines medical conditions as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i)–(ii).

[2] Pincites to page numbers in Docket Entry Number 40-3 refer to the CM/ECF pagination generated on the upper-righthand corner.

On August 26, 2020, FCI Jesup Warden Linda Geter denied Defendant's May 15, 2020 request for compassionate release and reduction in sentence. (D.E. 40-3 at 3.) Defendant filed the instant Motion on October 8, 2020, and the Government opposed.[3] (D.E. 40-1, 41.)

Defendant contends that his release is warranted because he suffers from hypertension, anxiety, and depression which, when coupled with his confinement at FCI Jesup and the COVID-19 pandemic, constitute "extraordinary and compelling reasons" under the FSA. (D.E. 40-1 at 21–33.) Defendant also asserts that he poses no danger to any person or the community,[4] and a sentence reduction comports with applicable factors set forth in 18 U.S.C. § 3553(a). (*Id.* at 34–48.) Lastly, Defendant argues that the Bureau of Prisons ("BOP") erred in failing to authorize his home confinement under guidelines issued in response to the COVID-19 pandemic on March 26, 2020 and April 3, 2020, under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). (*Id.* at 49–55.)

C.

This Court finds that Defendant has not established any "compelling and extraordinary reason" to justify his release as required by the FSA. *See Epstein*, 2020 WL 1808616, at *2. First, consistent with the findings of other courts, Defendant's anxiety and depression do not warrant release. *See, e.g.*, *United States v. Hight*, Crim. No. 04-333-1, 2020 WL 5653487, at *6 (E.D. Pa. Sept. 23, 2020) (denying compassionate release based on defendant's anxiety and depression where he received medical treatment and could provide self-care); *see also United States v. Freedland*, Crim. No. 15-175-1, 2020 WL 4926542, at *6–7 (E.D. Pa. Aug. 21, 2020) (collecting cases); *United States v. Leathers*, Crim. No. 19-633, 2020 WL 2219853, at *2 (D.N.J. May 7, 2020). Defendant has not established that his anxiety or depression have substantially diminished his ability to provide self-care, even when combined with the realities of COVID-19. (*See generally* D.E. 40-1, 40-2, 40-3.) Furthermore, the Centers for Disease Control and Prevention ("CDC") does not include anxiety or depression on its list of health conditions that increase the risk of serious illness from the virus that causes COVID-19. CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Nov. 9, 2020.) Indeed, Defendant's medical records reflect that he receives medication to treat anxiety and depression, further negating justification for release under the FSA. (*See* D.E. 41-3.)

---

[3] Because Defendant filed the instant Motion more than 30 days after his request to Warden Geter, Defendant has exhausted his administrative remedies. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).

[4] Defendant vehemently denies involvement in a murder plot as described in his Presentence Report ("PSR"). This Court will not entertain any argument as to the veracity of contents in Defendant's PSR because no objections were raised at the time of Defendant's sentence or on appeal. (*See* D.E. 32 at 2:22–3:6); *see also United States v. Siegel*, 477 F.3d 87, 93 (3d Cir. 2007) (noting that the factual contents of defendant's PSR were adopted by his failure to object before sentencing or on appeal).

Although Defendant also claims to suffer from hypertension, Defendant's medical records submitted by the Government reflect no such diagnosis.[5] (*See* D.E. 41-3 (denying presence of hypertension).) Even when defendants submit medical records corroborating hypertension, courts have denied motions for compassionate release.[6] *See, e.g.*, *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying compassionate release where defendant had hypertension and other aliments). Furthermore, although 240 inmates at FCI Jesup have recovered from COVID-19, there were no positive COVID-19 cases among the inmate population as of October 28, 2020. (*See* D.E. 41 at 28); *see also United States v. Lloyd*, Crim. No. 11-036, 2020 WL 4501811, at *2 (E.D. Va. Aug. 5, 2020) (denying a FCI Jesup inmate's motion for compassionate release and noting that a prior COVID-19 outbreak at the facility, which resulted in one fatality, appeared to pass). As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597.

This Court also considers the factors set out in 18 U.S.C. § 3553(a) when determining whether to grant a sentence reduction.[7] In doing so, this Court notes that Defendant participated in a drug trafficking organization by purchasing firearms, smuggling firearms on commercial aircraft, transporting narcotics proceeds, and participating in a murder plot. (*See* D.E. 41 at 3–4 (citing PSR).) Defendant accepted cash and gifts in return. (*Id.* at 4 (citing PSR).) Although Defendant had no prior criminal history, he committed the aforementioned acts with the help of his contacts while serving as a lieutenant in the Professional Compliance Bureau-International Affairs at the Miami-Dade Police Department, where he had worked for over two decades. (D.E. 40-1 at 38.) Given these points, this Court finds that reducing Defendant's sentence beyond the

---

[5] Defendant submitted over 160 pages of exhibits accompanying his submission. (D.E. 40-2, 40-3.) However, not one of those documents reflect his purported hypertension. (*See generally* D.E. 40-2, 40-3.) For the same reason, Defendant wholly fails to substantiate his claim that he suffers from medical conditions worse than those of the defendant in *United States v. Somerville*, Crim. No. 12-225, 2020 WL 2781585 (W.D. Pa. May 29, 2020), or other defendants in the plethora of cases cited in his moving brief. (*See* D.E. 40-1 at 24–33; *see also id.* at 8–9 (noting that compassionate release was granted for an inmate at FCI Jesup who suffered from Type 2 diabetes, hypertension, hyperlipidemia, and obesity).)

[6] Moreover, hypertension is not listed on the CDC's list of medical conditions that place individuals at increased risk of severe illness from the virus that causes COVID-19. CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. (last accessed Nov. 9, 2020.)

[7] Here, the following § 3553(a) factors are applicable to this Court's analysis:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant . . . .

18 U.S.C. § 3553(a)(1), (a)(2).

30-month reduction he previously received (D.E. 36, 37) would not properly "reflect the seriousness of the offense," "afford adequate deterrence to criminal conduct," or "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2); (*see* D.E. 32 at 27:18–22.)

Lastly, Defendant seeks to invoke the CARES Act in support of his alternative request for home confinement. Separate and distinct from the FSA, the BOP may transfer certain inmates to home confinement pursuant to 18 U.S.C. § 3624(c)(2) during the final six months or 10% of their sentence. With the recent enactment of the CARES Act, the BOP is authorized to extend the maximum length of home confinement. *See* CARES Act § 12003(b). Accordingly, the BOP has instituted its own eligibility guidelines. Because this Court does not have authority to determine an inmate's eligibility for home confinement under the CARES Act, Defendant's request is denied. *See, e.g.*, *United States v. Calabretta*, No. Crim. No. 12-131, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020) ("The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP."); *see also United States v. Dunich-Kolb*, Crim No. 14-150, 2020 WL 6537386, at *12 (D.N.J. Nov. 5, 2020) (noting that the "BOP has the first and last word").

This Court is sympathetic to Defendant's concerns regarding possible contraction of the virus causing COVID-19. However, speculation about what may or may not occur at some point in the future does not constitute a "compelling and extraordinary" reason for release. This Court is therefore satisfied that release is not warranted.

## **CONCLUSION**

Defendant's Motion for Compassionate Release, or in the alternative for transfer to home confinement, is **DENIED** without prejudice. An appropriate order follows.

                        /s/ Susan D. Wigenton
                    **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties